MATHEW PHELPS, Appellee,

*against*

MOSES GODDARD and BUEL HITCHCOCK, Appellants.

Combination to entice a citizen within the jurisdiction of another State for the purpose of procuring him to be arrested on civil process, is actionable, tho' the debt for which he is arrested is justly due.

ATTACH *Moses Goddard* and *Buel Hitchcock*, of *Addison*, in the County of *Addison*, *et al.* to answer unto *Mathew Phelps*, of *New-Haven*, in the same County, in a plea of trespass on the case. Whereupon the plaintiff declares and says, that at *New-Haven* aforesaid, on the 20th day of *July*, A. D. 1798, he the plaintiff then was, long before had been, and still is an inhabitant of said *New-Haven*; and the said defendants, combining, conspiring and confederating together to wrong and injure the plaintiff, did entice and persuade the plaintiff to go to *Crown Point*, within the jurisdiction of the State of *New-York*, from his home and his friends, and from the State of which he was an inhabitant as aforesaid; and the plaintiff so being fraudulently enticed and persuaded from his friends and acquaintance, among strangers and out of the State of which he was an inhabitant as aforesaid, at *Crown Point* aforesaid, in the State of *New-York* aforesaid, on the 20th day of *July* afore-

said, they procured the plaintiff to be arrested on a
process issued from the Supreme Court of the State
of *New-York* aforesaid, in the name of one *William
Finch* against the plaintiff on an old demand in fa-
vour of the said *William Finch* against the plaintiff
for the sum of three hundred dollars, from the pay-
ment of which said demand of the said *William Finch*
he the plaintiff had long before the arrest aforesaid
been exonerated in this State by the statute of limita-
tions ; and the plaintiff being so arrested as aforesaid,
on the process aforesaid, for such demand of the said
*William* as aforesaid, was on said process then and
there, to wit, at *Crown Point* aforesaid, on the same
20th day of *July* aforesaid, held a prisoner for the
space of six hours, when the plaintiff, for the purpose
of obtaining his discharge from said imprisonment,
at great trouble and expense procured and entered
bail for his the plaintiff's appearance in said action
before the Supreme Court of the State of *New-York*
aforesaid ; and the plaintiff further says, that the said
*Moses, Buel et al.* further fraudulently combining and
confederating together against the plaintiff as afore-
said, procured the process so served on the plaintiff
as aforesaid to be returned to the Supreme Court of
the State of *New-York* as aforesaid, and entered in
said Court, where the same process aforesaid is yet
pending, and he the plaintiff is liable, by the laws of
the State of *New-York* aforesaid to have a judgment
of the said Supreme Court rendered against him in
the process aforesaid, for the whole sum of the afore-
said demand so existing against him by the laws of
the State of *New-York* as aforesaid, although the
same demand had, long before the confederacy and

combination of the said *Moses, Buel,* &c. and their arrest of the plaintiff so made as aforesaid, been barred by the statute of limitations of this State. By reason of which the plaintiff hath been put to great cost, charge, expense and trouble in defending in the action aforesaid on the process aforesaid, on which he the plaintiff was so arrested as aforesaid, and by the fraudulent combination and confederacy of the said *Moses, Buel,* &c. as aforesaid, is injured and made worse, as he says, 3,000 dollars.

*Goddard* and *Hitchcock* arrested, and *non est* as to the other confederates.

At the County Court, the cause went to the Jury on the general issue. Verdict for plaintiff, 100 dollars. Defendants gave notice they should waive their plea at the Supreme Court, and demur generally to the declaration.

At this term, the demurrer was argued and decided.

*Amos Marsh,* in support of the demurrer. This is a novel declaration. If we should search from the earliest book of entries to the most modern, we shall never find one of this nature. It is true, variety of injury will continually produce a variety of declarations in case. But then, to be correct, although they differ in allegation, they must be founded on the great and leading principles of the law. This declaration appears to be equally destitute of form and principle. In the present argument we shall not descend to notice the defects of form, which may possibly be cured by jeofails; but we shall contend against the substance of it.

This declaration allegates, that my clients, with others, combining and confederating, not with force and strong hand, not *vi et armis* and with breach of the peace, but by *enticement*, persuaded the plaintiff to go with them within the jurisdiction of a neighbouring State, and there procured him to be—what? arrested to respond to a just debt due to one of the citizens of that State, and recoverable by its laws, although barred by our statute of limitations. To exhibit this novel declaration in all its naked deformities, we have only to apply to the plaintiff himself. Let us question him. Is not the debt for which you were arrested due? He answers by his declaration, it is. Is it not a just debt? He confesses, that though *an old*, yet it is a debt justly due. Did my clients assault you? did they batter, beat or wound you, until you were forced to pay it? No; but they caused me to answer for my neglect in failing to pay an honest debt, before one of the most upright and intelligent State Courts in the Union. Of what, then, do you complain? Hear his reply from the declaration itself: " By the law of the State where I reside, my creditor is for ever barred from bringing any action against me to compel me to pay this just demand; and I had hoped, under the letter of our statute of limitations, to defraud my creditor of his property; and now your clients have enticed me to act like an honest man, and I am persuaded this Court will make them respond in damages for this grievous wrong."

Is not this substantially the language of the declaration? But let me ask seriously, is it a language which ought to be heard in this Court of Justice? I

have ever been taught, that he who crieth for justice against others, should first do justice himself.

*Miller, e contra.* It is true our declaration is new, but certainly it is incorrect to assert, that it is not founded on principle. To every possible injury the law supplies a possible and adequate redress. Here is an injury sustained by the plaintiff inflicted upon him by the combination and deceit of the defendants and their associates; and shall it be held, that he has no remedy. It is true, we can find no precedents in our books of entries: but the reason is plain; such an injury could not have been inflicted in *England;* it grows out of the state sovereignties. Here we have seventeen sovereignties, independent of each other as to their internal regulations and municipal laws. Their laws operating on contracts are various. In one State an action upon a species of contract is limited to a lesser, in another to a more extended term of years. In transitory actions limited by statute in one State, and not barred in another, it is to be expected that the creditor will prosecute for judgment in that where his demand is recoverable, if he can bring the debtor within process. This often operates hardly upon him, who may be compelled to respond a demand in a sister State, when he is debarred from recovering a demand of the same age and nature in his own. It is to be regretted that provision was not made in the Federal Constitution to enable the Legislature of the Union to establish some uniform system of limitation of civil actions, if not on torts on contracts. As it is, the subject has often occupied the attention of the various State Judiciaries. In some

States the Judges have decided, that the *lex loci* where the contract was made should govern; in others they have considered both the action and the contract transitory, and have subjected a contract made in another State to the laws of their own. In other States—but it is unnecessary to state the various decisions in the different States in the Union. Among these jarring decisions, we in this State have an equal right to our opinion. Our Legislature have a sovereign right to enact statutes of limitation. Our Supreme Court will, we trust, consider that it is the great object of their appointment to carry the laws of the Legislature into effect; and it is the right of the citizens to be protected by those laws. If an action is limited by our laws, he who abides within our jurisdiction can never be exposed to such action; and they who combine to entice him within a jurisdiction where the action is not limited, shall respond in damages. This doctrine is not entirely novel. In *Root's Reports*, p. 59. we find a case of *David Leavitt* and two others v. *Peter Sherman*, which shews, that the Supreme Court in *Connecticut* considered an action of this nature would lie, although the Court decided that the demurrer was sufficient, upon the exception there taken, viz. that one of the plaintiffs, who was not arrested, joined in the action with two others who were.

The present action is not brought against the creditor who was in pursuit of his debt, against the officer executing a legal precept; but against men, strangers to the contract, but neighbours to the plaintiff, probably bribed to entice their unwary and unof-

9

fending neighbour into a scene of costs, vexation and trouble.

*Court.* Read to us authorities to shew, that merely enticing a person to become obnoxious to civil process for a just demand, is actionable.

*Miller.* With submission, this is not a just, that is, a legal demand. We wish to know where the line shall be drawn.

*Court.* If personal force is applied, an action of trespass *vi et armis* will lie; and the Court will be very liberal in their inquiry after consequential damages. But you have alleged no force. You may at least shew some analogous cases, if any exist.

*Daniel Chipman.* We have already stated that the case is novel, and we can shew no precedent. But we argue from the nature of the thing. The declaration exhibits a peaceable citizen engaged at home in his domestic concerns, not concealed either in person or property from his creditors, but amenable at all times to the laws of the government which he renders his taxes and personal services to support. If such a man is enticed into a foreign jurisdiction, and there exposed to all the costs, inconveniences and vexations of a lawsuit among strangers, by the combination and deceit of his neighbours, who being strangers to the suit, to suppose them bribed is attributing the best possible motive to their conduct. If such an event takes place, the moral sense rises against it. We feel that the man is injured, and all

see, that from the common principle of justice he ought to have redress.

*Court.* But if the debt is *bona fide.*

*Chipman.* With submission we conceive, that if the debt *is* honest, it makes no odds. We have wholesome laws, and our citizens are entitled to their protection; and I have no idea that the defendants shall be permitted to take us from this State, and say, " We will take you from a land where no justice is found, and carry you where it is well administered." If this action will not lie, neither will an action, if a citizen were enticed to *Europe*, and there made liable to decision upon a contract made here under some usage or practice which might run counter to all our ideas of justice, and to the very intention of the parties contracting.

We have ever been taught that the law abhors deceit. Why should it be made to countenance it in this instance? If this demurrer prevails, will it not be sanctioning fraud by law? If our client had concealed himself or property, there might have been possibly some excuse for some kind of art in enticing him into daylight.

This declaration is in the nature of an action of conspiracy, and there is surely sufficient set forth in it, to sustain it on demurrer. If there is but a trivial injury sustained, this should not operate in demurrer. Let the quantum be the object of inquiry after damages. We shall shew, if permitted, under this declaration, the combination of the defendants and their confederates, and the injury we have suffered by being enticed from the protection of our own laws,

within a foreign jurisdiction. If the demand of *Finch* is just, which is the pretence for this violation of our rights, is it therefore no injury to be compelled to attend a Court at a great distance, to be subjected to the necessary and augmented expenses in a strange land, to say nothing of the fees of advocates, which are known to be much greater than in our own Courts.

*Darius Chipman*, for the demurrant. Our opponents having argued themselves into the opinion that there is no substance in their declaration, now seem determined to rely upon the form. The declaration is said to be in the nature of an action of conspiracy, and that there is sufficient to sustain it in the very language of it. Every sufficient declaration in trespass on the case must set forth an *injury* sustained by the plaintiff, and make out a case for which an action will lie. The merely stating that the defendants have confederated and combined, unless some injurious and unlawful act is stated as the consequence of their combination and confederacy, is of no more avail than if the plaintiff had alleged that defendants had confederated and combined to feed and clothe the plaintiff. The gist of the action of conspiracy is an injury sustained as the effect of it. Here is none set forth, unless the exposing a man to justice is an injury.

After so much has been said of the just abhorrence in which the law holds deceit, it seems confessed that there is a certain *pia fraus* at which my brother *Chipman's* morality does not revolt. He acknowledges, that if the plaintiff had concealed himself and property, some kind of deceit might have been lawfully used to

entice him into daylight. But where is the difference? In this case were not the plaintiff and his property effectually concealed from his creditor? He had not, it is true, hidden himself in the caves of the rocks, but he had completely concealed himself from his honest creditor under the dark cloud of our limitation statute.

But wherein consists the moral turpitude of the deceit alleged to have been practised; for the charge of bribery is *dehors* the record. *I* should esteem it a *moral* duty to assist an honest creditor in recovering a *bona fide* debt.

It is said this action is not brought against the creditor or officer making the arrest; conceding, I presume, that it could not be maintained against either of them. But if the act was legal in them, is it not in my clients, their servants?

But if this declaration should be sustained, what is to be the measure of damages? Shall it be *Finch's* demand? The action upon that demand, we learn from the declaration, is now pending in the Supreme Court of the State of *New-York.* The writ may abate, or judgment may be for the present plaintiff; or if judgment for *Finch,* it may be reversed by error. Can we now know what will be the quantum of damages in that suit? If we could, is it right that my clients should respond it in damages under the present suit?

It is said, costs will accrue in that suit, and advocates' fees will be great, and expenses of attendin Court will be heavy. But if these are taken into consideration in the inquiry after damages in this suit, would not such items be the foundation of an action

in every case where a citizen of this State seeks re-dress against his fellow-citizen in another State, where the expense of living, costs of Court, and fees of advocates, may be higher than in this State ?

The case cited from *Root's Reports* does not touch the present case.

On the whole, we consider that the plaintiff, in the declaration in question, has set forth no cause of action. If he has counted on any damage sustained, it is *damnum absque injuria.*

The Chief Judge delivered the opinion of the Court.

It is to be regretted, that so wide a difference in the laws of the respective States of the Union, and of the decisions of their Courts upon similar subjects, exist. It often operates to the detriment of suitors. It is to be hoped, that at some not far distant day, *the publication of reports* of decisions in the State Courts will effect a greater uniformity in law and decision. Until then, nought remains but for each State to promulgate such laws as meet the sense and habits of its own citizens, and for each State Judiciary to administer them faithfully.

The Court are not prepared to say that they would sustain an action *as* against *Finch* the creditor, who had undoubtedly a right to give the preference to his own State laws and Court, to obtain payment from the present plaintiff of a *bona fide* debt recoverable in that State, but limited in ours.

But the present defendants were strangers to the contract, had no interest in the suit instituted to compel the fulfilment of it, and were fellow-citizens with

the plaintiff. It certainly is not for the peace of society to sanction combinations to entice our fellow-citizens within the jurisdiction of other States, and the process of their Courts. The law abhors deceit, and it is to be hoped that our halls of justice will be the last places polluted with the maxim of modern ethics, that the end justifies the means.

The laws of the Union, and those of our own State, provide for the apprehension and removal out of the State, of persons charged with crimes committed in another State; but they have made no such provision in civil process.

Let judgment be entered that the declaration is sufficient, and that the defendants answer over.

*S. Miller* and *Daniel Chipman,* for plaintiff.
*Amos Marsh* and *Darius Chipman,* for defendants.